IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SOUTHERN ILLINOIS RAILCAR CO.,           )
                                         )
            Plaintiff/Counterdefendant,  )
                                         )
vs.                                      )       Case No. 05-cv-0521-MJR
                                         )
NASHVILLE & EASTERN RAILWAY CORP.,       )
                                         )
            Defendant/Counterclaimant.   )

MEMORANDUM AND ORDER

REAGAN, District Judge:

A.      Introduction

        Southern Illinois Railcar Company ("SIRC") filed this suit in Illinois state

court, claiming that Nashville & Eastern Railway Corp. ("NERC") breached a railcar lease

agreement between the two parties and was unjustly enriched thereby.  NERC removed

the action to this United States District Court one year ago.  Subject matter jurisdiction

lies under the federal diversity statute, 28 U.S.C. § 1332.

        With leave of court (and following the Court's ruling on a motion to

dismiss), SIRC filed an amended complaint in November 2005.  NERC responded with an

answer and four-count counterclaim the following month.

        NERC's counterclaim alleges: (1) SIRC breached the lease agreement by

failing to provide NERC with railcars in satisfactory condition and failing to repair the

railcars as required, (2) SIRC knowingly made false representations regarding the

condition of the railcars, which NERC relied on to its detriment, (3) SIRC carelessly or negligently made representations regarding the condition of the railcars, without ascertaining the truth of those statements (statements which were relied on by NERC), and (4) SIRC's concealment of facts regarding the condition of the railcars violated the Illinois Consumer Fraud and Deceptive Business Practices Act, **815 ILCS 505/1**, *et seq.*

In April 2006, the undersigned Judge denied SIRC's motion to dismiss NERC's counterclaim, explaining (Doc. 40, pp. 3-4):

> Arguing for and against dismissal of NERC's counterclaim, the parties submitted hundreds upon hundreds of pages of material (much of which originated in the bankruptcy proceedings). This Court cannot properly consider all of that documentation on a Rule 12(b)(6) motion.
>
> Assuming, arguendo, that this material could properly be assessed under Rule 12(b)(6), after accepting all well-pled factual allegations in the counterclaim as true and drawing all reasonable inferences in the counterclaimant's favor, this Court would be hard-pressed to dismiss NERC's counterclaim at this point.
>
> Nor is the Court persuaded by SIRC's argument for dismissal of the counterclaim for lack of subject matter jurisdiction....

As to the Rule 12(b)(6) motion, the undersigned Judge further noted (*Id.*, p. 3): "the question of res judicata is better decided via summary judgment motion than via Rule 12(b)(6) motion."

On July 5, 2006, SIRC moved for summary judgment on NERC's counterclaim and affirmative defenses. NERC responded on August 3, 2006. For the reasons stated below, the Court grants SIRC's motion.

2

B.    Applicable Legal Standards

Summary judgment is appropriate when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c)**; *Phillips v. Quebecor World RAI, Inc.,* 450 F.3d 308, 310 (7th Cir. 2006); *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 985-86 (7th Cir. 2006). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The doctrine of res judicata holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Highway J Citizens Group v. U.S. Dept. of Transp.*, – F.3d –, 2006 WL 2136639, *5 (7th Cir. Aug. 2, 2006), *citing Allen v. McCurry*, 449 U.S. 90, 94 (1980).

The three requirements for res judicata under federal law are: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits. *Id.*, *quoting Cent. States, S.E. & S.W. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002). If these requirements are fulfilled, res judicata bars not only those issues which were actually decided in a prior suit but also all issues which *could have been* raised in that action. *Id.*, *citing* Brzostowski *v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995).

Although the doctrine of res judicata applies in the context of a bankruptcy confirmation/discharge, *see, e.g., D & K Properties Crystal Lake v. Mutual Life Ins.*

3

*Co. of New York*, 112 F.3d 257, 259 (7th Cir. 1997), the doctrine does not override the requirements of due process, and a court must take care not to enforce a bankruptcy confirmation order if the creditor did not receive adequate notice of the impending discharge.

As the Seventh Circuit emphasized in *In re Hanson*, 397 F.3d 482, 486 (7th Cir. 2005):

> Although we recognize the strong policy favoring finality of confirmation orders, due process entitles creditors to the heightened notice provided for by the Bankruptcy Code and Rules, and the dictates of due process trump policy arguments about finality.  See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 …(1950)("An elementary and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

C.    <u>Analysis</u>

In support of its summary judgment motion, SIRC asserts that NERC's counterclaim and affirmative defenses are barred by 11 U.S.C. § 1141 and/or the doctrine of res judicata.  SIRC  maintains  that the counterclaim arose *prior to* confirmation of SIRC's Chapter 11 Plan of Reorganization, and the United States Bankruptcy Court issued Orders which preclude claims arising before confirmation – including NERC's counterclaim and affirmative defenses, which allege that SIRC breached its contract with NERC. Review of several key dates in the bankruptcy proceedings aids resolution of this issue.

4

SIRC filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code on February 7, 2002.[1]  The Bankruptcy Court assigned Number 02-30456 to SIRC's case and set a series of deadlines by which NERC – and other creditors – had to file any objection to the Plan of Reorganization.[2]  For instance, November 27, 2002 was the deadline for objections to SIRC's initial disclosure statement.  NERC did not file an objection to the disclosure statement.  A hearing was held on the adequacy of SIRC's disclosure statement in December 2002.  The record before this Court indicates that no representative of NERC appeared at that hearing.  *See* Affidavit of Bonnie L. Clair (Doc. 31-10) and docket sheet from bankruptcy proceedings (Docs. 31-2 through 31-9).

In September 2003, SIRC's Third Amended Plan of Reorganization (also referred to as the Final Plan of Reorganization) was provided to all of SIRC's creditors, equity security holders, and parties in interest – including NERC.[3]

---

[1]   References herein are to the Bankruptcy Code in effect prior to the October 17, 2005 enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  SIRC correctly notes that the underlying bankruptcy case was closed by final decree on December 10, 2004, so the October 2005 amendments/revisions do not apply.

[2]   A related case was filed by SIRC's affiliate and given Number 02-30457. The Bankruptcy Court consolidated the two Chapter 11 proceedings.  The term "Debtors" (plural) was used in the Bankruptcy Court and, as quoted herein, refers to SIRC and its affiliate (Southern Illinois Railcar Company, LLC).  The two bankruptcy proceedings were administered in a single action (Case No. 02-30456).

[3]   SIRC's Final Plan ("Plan") is marked as Exhibit K and was electronically filed as Docs. 31-28, 31-29 and 31-30.  The Order Confirming Third Amended Plan of Reorganization of Debtors ("Confirmation Order") is marked as Exhibit L and was electronically filed as Doc. 31-31.

NERC did not attend the October 2003 hearing on objections to the Plan. *See* docket sheet for bankruptcy proceedings and Clair Affidavit (Doc. 31-2 through 31-9 and Doc. 31-10). The Bankruptcy Court approved the Plan on November 26, 2003. A copy of the Confirmation Order was provided to NERC and other creditors/parties in interest. NERC had 180 days after service of the Confirmation Order to petition for revocation of the Confirmation Order. **11 U.S.C. § 1144**. NERC neither filed a petition to revoke the Confirmation Order nor appealed the Confirmation Order.

SIRC argues that the Plan binds all pre-bankruptcy creditors, including NERC. Article XIX (¶ 19.1) of the Plan specifically addresses the disposition of claims which were or could have been made against SIRC prior to confirmation of the Plan:

> From and after the Effective Date, all Creditors or other individuals or entities who have held, hold, or may hold Claims against or Interests in either of the Debtors shall be permanently enjoined from taking in connection with matters related to the Debtors or these cases any of the following actions against the Debtors, or any of their property...: (i) commencing or continuing, in any manner or in any place, any action or proceeding...; (iv) asserting a setoff, right or subrogation or recoupment of any kind against any debt, liability, obligation due to the Debtors; or (v) commencing or continuing, in any manner or in any place, any action that ... is inconsistent with the provisions of the plan....

The Plan also contained a "reservation of rights" section which provided, in pertinent part, that SIRC *retained* certain claims. Article XXIV of the Plan (¶ 24.2) provides that SIRC maintains ownership of actions to recover money or property:

> Notwithstanding the Confirmation of this Plan, the Debtors shall retain and remain in possession, after the Confirmation

6

Date, of all causes of action they may have under the United States Bankruptcy Code....[4]

But did the actions forming the basis of NERC's counterclaim and affirmative defenses arise *before* the Bankruptcy Court confirmed SIRC's Plan?  Yes. Judge Kenneth J. Meyers signed the Confirmation Order on November 26, 2003.  The record suggests that the nearly all the charges corresponding to SIRC's claims were invoiced *before* the Plan was confirmed, and NERC did not have possession of SIRC's railcars after June of 2001.  *See* Affidavit of George Defrates (Doc. 42-2) at p. 2.

Moreover, the Plan itself expressly refers to the lease agreement between SIRC and NERC.  Article XVIII of the Plan (¶ 18.1) states: "The Debtors' treatment of executory contracts and unexpired leases ... is listed on Exhibit B attached hereto." Exhibit B to the Plan identifies the lease in question as "Railcar Lease - SIRC Lessor" dated 6/29/1999.  *See* Doc. 31-30, p. 4.  That exhibit further reveals that SIRC was to assume the NERC lease, and no cure amount was due for assumption of the lease.  *Id.*

In its response to the summary judgment motion, NERC concedes that "all relevant transactions and occurrences giving rise to its counterclaims and affirmative defenses predate Plaintiff's discharge in Bankruptcy" (Doc. 44, p. 2).  As to binding effect, the Confirmation Order broadly provides that all provisions of the Plan shall bind not only Debtors but also **"any creditor or equity security holder of the Debtors,**

---

[4]     SIRC asserts that these retained claims included actions under § 542 of the Bankruptcy Code for the turnover of monies to a debtor.

whether or not the Claim or Interest of such creditor or equity security holder is impaired under the Plan and **whether or not such creditor or equity security holder has accepted the Plan**" (Doc. 31-31, pp. 8-9, emphasis added).

This sweeping language directly mirrors the provisions of **11 U.S.C. § 1141**. Section 1141(a) addresses the effect of plan confirmation.

> Except as provided in subsections (d)(2) and (d)(3) of this section, **the provisions of a confirmed plan bind** the debtor ... and **any creditor**, equity security holder, or general partner of the debtor, **whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan**.

*Id.*, **emphasis added.**

> Additionally, § 1141(c) provides:

> Except as provided in subsection (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of the plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

Similarly, § 1141(d)(1)(A) states that confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation ... whether or not the holder of such claim has accepted the plan."

But the statute carves out certain exceptions to the broad preclusive effect of confirmation, two of which NERC relies on to oppose the summary judgment motion

as to three counts of the four-count <u>counterclaim</u>.[5]   NERC opposes summary judgment on its <u>affirmative defenses</u> by insisting that the rights asserted therein do not even constitute "claims" subject to discharge in bankruptcy.

Analysis begins with what constitutes a "claim" under the Bankruptcy Code. **11 U.S.C. § 101** supplies the starting point.  Section 101(5) establishes that the term "claim" means either (A) a right to payment, whether or not reduced to judgment, liquidated, fixed, contingent, matured or unmatured, secured or unsecured, legal or equitable, or (B) a right to an equitable remedy for breach of performance, if that breach gives rise to a right of payment, whether or not that right is reduced to judgment, fixed, contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

As to NERC's **counterclaim**, Counts II, III, and IV seek monetary damages – *i.e.,* a "right to payment" under § 101(5)(A) – and thus constitute "claims."   The only remaining question as to these claims is whether other provisions of the Bankruptcy Code *exempt* these claims from discharge.  **11 U.S.C. § 1141(d)(2)** excludes from those claims subject to discharge any debt excepted under § 523 of the Bankruptcy Code.

Section 523 exempts, *inter alia*, a debt for money, property or services, to the extent the debt was obtained by false representations or actual fraud.  **11 U.S.C. § 523(a)(2)(A)**.   In the case at bar, while not really claiming *actual fraud* by SIRC,

---

[5]      NERC concedes that the claim presented in <u>Count I</u> of its counterclaim <u>*was*</u> subject to discharge in bankruptcy.  *See* Doc. 44, p. 5, n.2: "no exception applies to Count I of its counterclaim for breach of contract…. Thus, it appears that this Count was discharged…."

NERC argues that Counts II, III and IV of the counterclaim are predicated upon false representations by SIRC regarding the quality of the rail cars subject to the lease agreement.  Thus, NERC reasons, discharge under § 1141 would not have absolved SIRC of liability for these claims.

NERC also relies on **11 U.S.C. § 523(a)(3)(B)**.  Section 523(a)(3)(B) excepts from discharge debts (of the kind specified in paragraph 2) which are not listed/scheduled in time to permit the creditor to timely file a proof of claim and request for a determination of dischargeability, *unless* "such creditor had notice or actual knowledge of the case in time for such timely filing and request."

At first blush, NERC's arguments based on the § 523(a) exemptions are compelling.  However, SIRC correctly replies that "section 523 of the Bankruptcy Code does not apply to the discharge of a corporation's debt: <u>it applies only to discharges of the debts of individuals</u>" (Doc. 45, p. 2, emph. in original).  The plain text of the statute does specifically refer to *individual* debtors.  "A discharge under section … 1141 … of this title does not discharge an **individual** debtor from any debt…."  **11 U.S.C. § 523(a) (emph. added)**.  SIRC – an Illinois corporation – simply is *not* an individual debtor, so § 523(a)'s exemptions do not apply to SIRC's debts.

Similarly, § 1141(d)(2) provides (emph. added): "The confirmation of a plan does not discharge an **individual** debtor from any debt excepted from discharge under section 523 of this title."  Federal Courts have recognized this distinction and confirmed that the § 523 exemptions from discharge apply only to individual debtors.  *See, e.g.,*

10

*Yamaha Motor Corp., U.S.A. v. Shadco, Inc.*, 762 F.2d 668, 670 (8ᵗʰ Cir. 1985)("we hold that the exemptions embodied in 11 U.S.C. § 523(a) do not apply to corporate debtors."); *In re Grouthes*, 226 F.3d 334, 337 (5ᵗʰ Cir. 2000)("the discharge-exception in 11 U.S.C. §§ 1141(d)(2) ..., applies only to individual debtors," and "§ 523(a)(1)'s discharge exceptions ... do not apply to corporate debtors.").

So NERC may not avail itself of either discharge exception on which it relies – § 523(a)(2)(A) or § 523(a)(3)(B).  No other exception to discharge applies here, and NERC is bound by the terms of Judge Meyers' Confirmation Order, unless the Court finds the notice to NERC to have been inadequate under *constitutional* due process requirements.  As noted above, a fundamental requirement in *any* bankruptcy proceeding is notice reasonably calculated to afford interested parties a chance to present their objections.  *Hanson*, 397 F.3d at 486.  NERC had such notice.

The record before the Court establishes that SIRC's counsel mailed formal notice of the bankruptcy (and the deadline for filing objections to SIRC's initial disclosure statement) to NERC's president on November 1, 2002.  *See* Exhibits B & F (Doc. 31-10 and 31-17).  NERC does not deny that it received this notification.   NERC did not file objections by the November 2002 deadline, did not attend the December 2002 hearing on the adequacy of the disclosure statement, did not respond to the solicitation package containing the Third Amended Plan of Reorganization, and did not attend the October 2003 hearing on objections to the Third Amended Plan of Reorganization.

Construing the facts and reasonable inferences in the light most favorable

11

to the NERC,[6] the Court concludes that no genuine issues of material fact remain, and SIRC is entitled to judgment as a matter of law on NERC's counterclaims.  Which leaves NERC's **affirmative defenses**.

The affirmative defenses contain similar allegations to the counterclaim. For instance, affirmative defenses 2 and 3 allege that SIRC made false statements about the condition of the railcars and concealed the defective condition of the railcars.  Based on these allegations, NERC asks that SIRC be estopped from obtaining the relief sought in its amended complaint.

In its brief opposing summary judgment, NERC contends: (1) the affirmative defenses are not "claims" subject to discharge under the Bankruptcy Act, so the Bankruptcy Court cold not adjudicate these claims, and (2) the affirmative defenses could not have been asserted by NERC in the underlying bankruptcy proceeding, because "back in 2003, there was no pending breach of contract claim against [NERC], nor was [SIRC's] contractual dispute … before such court" (Doc. 44, p. 4).

The Court is not persuaded by either argument.  The term "claim" is broadly defined, as examined above in discussing § 101(5)(A) of the Bankruptcy Code. Moreover, caselaw in the federal courts stresses the expansive and "exceedingly broad" definition of this term.  *See, e.g., Ohio v. Kovacs*, 469 U.S. 274, 278 (1985); *In re Egleston*, 448 F.3d 803, 812 (5th Cir. 2006)("**The Supreme Court has explained that**

---

[6]      *Healy v. City of Chicago*, 450 F.3d 732, 738 (7th Cir. 2006), *citing Sornberger v. City of Knoxville*, 434 F.3d 1006, 1012 (7th Cir. 2006).

Congress intended 'to adopt the broadest available definition of claim.'"); *In re Sherman*, 441 F.3d 794, 803 (9th Cir. 2006); *U.S. v. Gurley*, 434 F.3d 1064, 1068 (8th Cir. 2006); *U.S. v. Apex Oil Co., Inc.*, – F.Supp.2d –, 2006 WL 1877029, *5 at n.5 (S.D. Ill. July 6, 2006)(citing Supreme Court decisions noting that Congress intended the "broadest possible definition" of the term "claim").

Furthermore, that definition includes a right to payment, even if that right is not yet fixed or matured.  The fact that SIRC had not yet sued NERC in the instant case does not mean that SIRC did not have a *contingent* claim arising out of the parties' existing relationship and lease agreement.  *See, e.g., Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1192 (7th Cir. 1993)(recognizing that, in some circumstances, a contingent claim may be deemed to exist even before a cause of action has accrued).

Construing the facts and reasonable inferences in the light most favorable to NERC, the Court finds that no genuine issues of material fact remain, and SIRC is entitled to judgment as a matter of law on NERC's affirmative defenses.  (Strictly speaking, judgment is not entered on affirmative defenses, but the Court bars NERC from raising these affirmative defenses.)

D.    Conclusion

11 U.S.C. § 1141 and the doctrine of res judicata preclude NERC's counterclaims and affirmative defenses herein.  Thus, the Court **GRANTS** SIRC's motion for summary judgment (Doc. 41) as follows.  NERC may not raise the affirmative defenses

13

asserted herein, and – at the appropriate time – the Clerk of Court shall enter judgment in favor of SIRC and against NERC on all four counts of NERC's counterclaim.

Of course, judgment will not be entered on any claims *now*, as the case does not end here.  SIRC (as plaintiff) still must prove its entitlement to relief sought in the second amended complaint and, assuming that proof is made, the amount of damages owed to SIRC.  Final pretrial conference and trial remain set in four months (12/1/06 and 12/18/06, respectively), and no dispositive motion may be filed after September 1, 2006 (*see* Docs. 5, 8).

**IT IS SO ORDERED.**

DATED this 18th  day of August 2006.

s/ Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge

14